1 | JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletree.com
2 | JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletree.com
3 | OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4 | 400 South Hope Street, Suite 1200
Los Angeles, CA 90071
5 | Telephone: 213-239-9800
Facsimile: 213-239-9045
6 |
7 | Attorneys for Defendants
CARMAX AUTO SUPERSTORES WEST
COAST, INC. and CARMAX AUTO
8 | SUPERSTORES CALIFORNIA, LLC

9 | **UNITED STATES DISTRICT COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 |

12 | DEREK MCELHANNON, ALEENA IQBAL, | Case No. _____
CHRISTOPHER SYHARATH, RUBEN
13 | SANTIAGO, and EMIL MILISCI, each | **NOTICE OF REMOVAL OF CIVIL ACTION**
individually, and on behalf of all others | **TO UNITED STATES DISTRICT COURT**
14 | similarly situated, | **PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441**
**AND 1446**
15 | Plaintiffs,

16 | v. | *[Filed concurrently with Civil Cover Sheet;*
*Certification of Interested Entities or Persons;*
17 | CARMAX AUTO SUPERSTORES WEST | *Disclosure Statement; Notice of Pendency of*
COAST, INC., a Virginia corporation; | *Other Action or Proceeding; and Declarations of*
18 | CARMAX AUTO SUPERSTORES | *R. Willson Hulcher, Jr., Patrick Leahey, Lee Ann*
CALIFORNIA, LLC, a Virginia limited | *Wilson, and Jennifer L. Katz in Support of Notice*
19 | liability company; and DOES 1-50, inclusive, | *of Removal]*

20 | Defendants.

21 | | Complaint Filed: November 21, 2018

22 |

23 |

24 |

25 |

26 |

27 |

28 |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS DEREK McELHANNON, ALEENA IQBAL, CHRISTOPHER SYHARATH, RUBEN SANTIAGO, and EMIL MILISCI AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendants CARMAX AUTO SUPERSTORES WEST COAST, INC. and CARMAX AUTO SUPERSTORES CALIFORNIA, LLC (together, "CarMax"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441(a), 1446, and 1453.  In support of such removal, CarMax states as follows:

I.   THE STATE COURT ACTION

1.   On or about November 21, 2018, plaintiffs Derek McElhannon, Aleena Iqbal, Christopher Syharath, Ruben Santiago, and Emil Milisci, individually and on behalf of all others similarly situated (hereinafter "Plaintiffs"), filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Derek McElhannon, Aleena Iqbal, Christopher Syharath, Ruben Santiago, and Emil Milisci, each individually, and on behalf of all others similarly situated, Plaintiffs, vs. CarMax Auto Superstores West Coast, Inc., a Virginia corporation; CarMax Auto Superstores California, LLC, a Virginia limited liability company; and Does 1-50, inclusive, Defendants*, which was assigned the case number HG18929561, in the Superior Court of Alameda County.  Exhibit A contains, among other documents served upon CarMax, Plaintiffs' Complaint. (*See* Ex. A.)

2.   On January 4, 2019, CarMax Auto Superstores West Coast, Inc. and Carmax Auto Superstores California, LLC each received, via their respective registered agents for service of process, copies of the (i) Summons (with Additional Parties Attachments); (ii) Complaint; (iii) Civil Case Cover Sheet; (iv) Superior Court of California, County of Alameda Alternative Dispute Resolution (ADR) Information Packet; and (v) the Stipulation to Attend Alternative Dispute Resolution (ADR) and Delay Initial Case Management Conference for 90 Days, which were served on them both on January 3, 2019.  (Declaration of Lee Ann Wilson in support of Notice of

Removal ["Wilson Decl."], ¶ 3.)  A copy of each of the foregoing items is attached to this Notice of Removal as Exhibit A.  (*Id*.)  The documents attached as Exhibit A constitute all pleadings, process, and other documents CarMax has received in this action.  (*See* Ex. A; Wilson Decl., ¶ 3.)

3.      Plaintiffs have not yet identified any of the fictitious "Doe" defendants identified in the Complaint.

4.      The Complaint asserts claims for the following causes of action against CarMax: (1) Failure to Pay All Wages Due Upon Termination in Violation of Labor Code § 201(a); (2) Failure to Provide Accurately Itemized Wage Statements in Violation of Labor Code § 226(a); (3) Failure to Provide Meal Periods in Violation of Labor Code §§ 226.7 and 512 and applicable IWC Wage Orders; (4) Failure to Provide Rest Periods in Violation of Labor Code § 226.7 and applicable IWC Wage Orders; (5) Failure to Pay Overtime Earned in Violation of Labor Code § 510 and applicable IWC Wage Orders; (6) Failure to Maintain Record of All Hours Worked in Violation of Labor Code § 1174; (7) Failure to Pay Wages for All Hours Worked in Violation of Labor Code § 1194(a); (8) Failure to Pay All Wages When Due in Violation of Labor Code § 204; (9) Failure to Reimburse Expenses in Violation of Labor Code § 2802; and (10) Unlawful Business Practices in Violation of Business & Professions Code §§17200 *et seq*.

5.      On February 1, 2019, CarMax timely served and filed their Answer to Plaintiffs' Complaint in the Superior Court for the County of Alameda.  A true and correct copy of CarMax's Answer to Plaintiffs' Complaint is attached to this Notice of Removal as Exhibit B.

6.      <u>This Notice Is Timely</u>.  This Notice of Removal is timely filed within 30 days of service of the Summons and Complaint upon CarMax.

## II.      <u>JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

7.      This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed by CarMax pursuant to 28 U.S.C. §§ 1441 and 1453, in that the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.00.  Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453, 1711-1715), federal district courts have original jurisdiction over a class action if

(1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated controversy exceeds $5 million.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

8.      CarMax is the only named and served defendant in this matter; thus, the consent of any other defendants is inapplicable.  Moreover, this action may be removed solely by CarMax without the consent of the other defendants pursuant to CAFA, 28 U.S.C. Section 1453(a).  *See* 28 U.S.C. §§ 1441, 1446; *Sherman v. A.J. Pegno Constr. Corp*., 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) (although the general agreement is that "defendants must join in seeking removal . . . there are exceptions to this rule for defendants who have not been served, unknown defendants, and fraudulently joined defendants"); *Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, 270 (W.D.N.Y. 2006) (The "rule of unanimity" is excused where the non-joining defendants have not been served with service of process at the time the removal petition is filed).

A.      <u>The Size of the Putative Class Exceeds 100.</u>

9.      Plaintiffs' Complaint defines the class as consisting of the following:

> All persons who are employed or have been formerly employed by Defendants, CARMAX AUTO SUPERSTORES WEST COAST, INC., a Virginia corporation and/or CARMAX AUTO SUPERSTORES CALIFORNIA, LLC[,] a Virginia limited liability [company] ('Defendants') in the State of California, and who, within four (4) years of the filing of this Complaint, have suffered any of the following:  Failed to have been paid by Defendants all of their lawful wages for all hours worked; who have failed to receive timely and accurately itemized wage statements; who worked and were not compensated for overtime; who were not provided with California Labor Code complaint *{sic}* meal and rest breaks; who were not compensated for missed or shortened duty free meal breaks[;] who were not reimbursed for use of personal cell phone expenses incurred in the discharge of their duties; and who failed to timely receive all wages due and owed upon their discharge or termination.

(Compl., ¶ 40.)

10.      The Complaint alleges that it "is estimated that there are in excess of 1,000" members of the putative class.  (*Id*., ¶ 42.)  CarMax's employment records show that the number of individuals who were and/or are employed in California and who may fall within the proposed class definition during the period from November 20, 2014 to on or about December 13, 2018 is at least 9,355.  (Declaration of Jennifer L. Katz ["Katz Decl."], ¶ 8.)

**B.      The Parties Are Diverse.**

11.      For diversity purposes, an individual is a "citizen" of the state in which he is

domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  An

individual's domicile is the place he resides with the intention to remain or to which he intends to

return.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

12.      Citizenship of Plaintiffs and Putative Class Members.  Named Plaintiffs Derek

McElhannon, Aleena Iqbal, Christopher Syharath, Ruben Santiago, and Emil Milisci are all

residents of the State of California.  (Compl., ¶¶ 9–13.) This action arises out of Plaintiffs'

employment with CarMax in California.  (*Id*.)  During the entire period of employment with

CarMax, Plaintiffs were employed in California, each listed California address(es) as their place of

residence, and, upon information and belief based on CarMax's records, are and have been citizens

of California.  (Declaration of Patrick Leahey ["Leahey Decl."], ¶¶ 3–7.)  The members of the

putative class, by definition, are or were employed in California as well.  (Compl., ¶ 40.)

Moreover, such putative class members are presumed to be primarily citizens of the State of

California.  *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an

important factor weighing in favor of citizenship).  CarMax's records indicate that more than 99

percent of the putative class members in this case have current or last-known addresses within

California.  (Leahey Decl., ¶ 10.)  Evidence of residence in a state creates a presumption that

individuals are domiciled in the state.  *See State Farm Mut. Automobile Ins. Co. v. Dyer*, 19 F.3d

514, 520 (10th Cir.1994) ("a party's place of residence is *prima facie* evidence of domicile"); *Lew*,

797 F.2d at 751 (finding that evidence of plaintiff's residency in the state alleged as his domicile

created a presumption that plaintiff was domiciled in the state).

13.      Citizenship of CarMax.  At all times on or after the date this action was filed, both

CarMax Auto Superstores West Coast, Inc. and CarMax Auto Superstores California LLC have

been citizens of Virginia and no other state.

14.      Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of

any State by which it has been incorporated and of the State where it has its principal place of

business."  The U.S. Supreme Court established the proper test for determining a corporation's

principal place of business for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend*, 559 U.S. 77 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Id.* at 92-93.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination[.]"  *Id.* at 93.

15.     The Ninth Circuit treats limited liability companies like partnerships for purposes of diversity jurisdiction.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard used by sister circuits and treating LLCs like partnerships).  Thus, "an LLC is a citizen of every state of which its owners/members are citizens."  *Id.*; *see also Handelsman v. Bedford Village Assocs., Ltd. Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000) (recognizing that a limited liability company has the citizenship of its members).

16.     For purposes of removal, diversity of citizenship is determined at the time the action is filed and at the time of removal.  *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002).

17.     At all times on or after the date this action was filed, CarMax Auto Superstores West Coast, Inc. is and has been incorporated under the laws of the Commonwealth of Virginia, and its principal place of business is and has been located in Virginia, where its corporate headquarters are located.  (Declaration of R. Willson Hulcher, Jr. ["Hulcher Decl."], ¶ 4.)  CarMax Auto Superstores West Coast, Inc.'s administrative and executive functions are centralized in its corporate headquarters, where employees perform general administrative functions including payroll, legal, tax, benefits, and accounting.  (*Id.*)  Moreover, CarMax Auto Superstores West Coast, Inc.'s highest corporate officers are located at the Richmond, Virginia headquarters, and they direct, control, and coordinate the entity's activities from that location.  (*Id.*)  Its senior management is also employed there and formulates corporate policies there.  (*Id.*)  Finally, a majority of corporate decisions are made by corporate officers in Richmond, Virginia.  (*Id.*)  Thus, CarMax Auto Superstores West Coast, Inc.'s principal place of business is located in Virginia.

18.     At all times on or after the date this action was filed, CarMax Auto Superstores

California, LLC, has been a limited liability company organized under the laws of the Commonwealth of Virginia. (Hulcher Decl., ¶ 2.) At all times on or after the date this action was filed, CarMax Auto Superstores California LLC is and has been a Virginia limited liability company with a sole member (CarMax Auto Superstores West Coast, Inc.) that is organized and has its principal place of business in Virginia. (*Id.*, ¶ 3.) Throughout this period, CarMax Auto Superstores California, LLC has had its corporate headquarters at the home office of CarMax, Inc. in Richmond, Virginia. (*Id.*) Its administrative and executive functions are centralized in its corporate headquarters in Virginia, where employees perform general administrative functions including payroll, legal, tax, benefits, and accounting. (*Id.*) CarMax Auto Superstores California LLC's highest corporate officers are also based at its corporate headquarters in Virginia, and direct, control, and coordinate the entity's activities from that location. (*Id.*) And, its senior management is also employed there. (*Id.*) Finally, the corporate records of CarMax Auto Superstores California, LLC are located at the corporate headquarters in Richmond, Virginia. (*Id.*) Thus, CarMax Auto Superstores California, LLC's principal place of business is located in Virginia.

19. Accordingly, for purposes of determining diversity, CarMax Auto Superstores West Coast, Inc. and CarMax Auto Superstores California LLC (whose sole member is CarMax Auto Superstores West Coast, Inc.) are regarded as a citizen of Virginia.

20. <u>Citizenship of Doe Defendants.</u> The citizenship of fictitiously named "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

21. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

**C.** **<u>The Amount in Controversy Exceeds an Aggregate of $5,000,000.00.</u>**

22. Plaintiffs have not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant

must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

23.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc*., C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

24.     Any calculation of the "aggregate amount in controversy" for purposes of CAFA may properly include all potential damages recoverable by the plaintiffs based on the claims asserted in the complaint. *Muniz*, 2007 WL 1302504, at *3. Such calculations should also include attorneys' fees to the extent the plaintiffs seek to recover them in the complaint. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Cagle v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-02134-MCE, 2014 WL 651923, at *10 (E.D. Cal. Feb. 19, 2014) (declaring that "attorney's fees may also be considered in determining the amount in controversy if such fees are recoverable by plaintiff, either by statute or by contract"); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (holding that, in a CAFA action, attorneys' fees are part of the amount in controversy calculation).

25.     While CarMax denies the validity of Plaintiffs' claims and requests for relief, and

does not concede in any way that the allegations in the Complaint are accurate, that Plaintiffs'

claims are amenable to classwide treatment, or that Plaintiffs or the purported class members are

entitled to any of the requested relief, the allegations in the Complaint show that it is more likely

than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506

F.3d at 700.

26.      As described further below, as well as in the concurrently filed declarations from

CarMax and its counsel[1], the amount in controversy exceeds $5,000,000.  In particular, the

following amounts are in controversy in this matter as a result of the claims alleged in Plaintiffs'

putative class action Complaint:

| Claim | Amount in Controversy |
|---|---|
| Failure to Pay Wages Upon Termination | **$ 15,781,519.20** |
| Attorneys' Fees | **$ 3,945,380.80** |
| **TOTAL** | **$ 19,726,899.20** |

(*See* Katz Decl., ¶¶ 9–14 & Ex. C.)

### 1.      Plaintiff's Claim for Waiting Time Penalties.

27.      In their First Cause of Action, Plaintiffs seek statutory penalties pursuant to Labor

Code section 203, as well as interest, attorneys' fees, and costs.  (Compl., ¶¶ 50, 52, 53.)  Plaintiffs

allege that, "[b]y failing to compensate Plaintiffs and Class Members as required by law," CarMax

"willfully failed to make timely payment of the full wages due to its employees who have resigned

or been discharged," and thereby violated Labor Code sections 201 and 202.  (Compl., ¶ 51; *see*

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from CarMax and its counsel constitute sufficient evidence to establish the amount in controversy.  *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express*, Inc., No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods {*sic*} and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

*also id.*, ¶ 34 (alleging that CarMax "willfully failed to pay all such legally due wages when formerly employed Class Members ceased their employment").)  Plaintiffs also contend that because CarMax failed to pay all wages owed at the time of termination, they are entitled, pursuant to Labor Code section 203, to wages that "continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," up to a maximum of thirty (30) days.  (Compl., ¶ 50.)

28.     Labor Code Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca*, 68 Cal.App.4th 487, 492-93 (1998).  As the "targeted wrong" addressed by section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  *Id.* at 493.  In other words, the "critical computation required by section 203 is the calculation of a daily wage rate," which can then be multiplied by the number of days of nonpayment, up to 30 days.  *Id.*

29.     Here, Plaintiffs contend that, in addition to the earned and unpaid wages at the time of termination, CarMax owes penalties under Labor Code section 203 at least in part as a result of its allegedly willful policies, practices and procedures governing the payment of wages, and the provisions of meal periods and rest breaks (and the alleged failure to pay premiums in connection therewith). (*See* Compl., ¶¶ 5, 19–34, 51–54.)  Because the Complaint explicitly alleges that CarMax failed to pay putative class members who are former employees their earned and unpaid wages, as well as their unpaid meal and rest period premiums, it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate, for all former employees whose employment ended more than 30 days prior to the date of removal.  *See Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-CV-02067-LJOJLT, 2014 WL 814652, at *8-9 (E.D. Cal. Feb. 28, 2014) (declaring that "the full thirty-days may be used" to calculate the amount in controversy for the waiting time penalties owed to each putative class member where the basis for the waiting time penalties claim was that "'the[ ] unpaid

wages are *still owed today*"") (emphasis and alteration in original);  *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

30.     According to the analysis of CarMax's records performed by its counsel for the purpose of calculating the amount in controversy, applying a three year statute of limitations, and a daily wage rate based on each former employee's base rate at a rate of eight (8) hours per day (*see* Leahey Decl., ¶ 12), CarMax has determined that there are at least 4,296 putative class members who have been terminated since November 21, 2015, and that all of those individuals have been terminated for at least 30 days; thus, CarMax has determined that the total amount in controversy as statutory penalties pursuant to Plaintiffs' First Cause of Action for waiting time penalties is at least **$15,781,519.20.**  (*See* Katz Decl., ¶¶ 9–11.)

### 2.     Plaintiffs' Claims For Attorneys' Fees.

31.     In the Complaint, Plaintiffs seek to recover attorneys' fees – including in connection with their waiting time penalties claim.  (*See* Compl., ¶ 53; *see also id.*, ¶¶ 63, 93, 113, 119, 137.) Although CarMax's amount in controversy analysis, as described above, meets the CAFA amount in controversy requirement, CarMax may also rely on a realistic estimate for attorneys' fees as alleged in Plaintiffs' Complaint.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (finding that CAFA's "amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees"); *Sanchez*, 2007 WL 1345706, at *2 (noting that

"[a]ttorney's fees, if authorized by statute or contract, are also part of the [amount in controversy] calculation"). Here, a realistic estimate of Plaintiffs' attorneys' fees is 25 percent of the total recovery. *See Muniz*, 2007 WL 1302504, at *4 n.8 (noting that, "in California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement"); *see also Jasso*, 2012 WL 699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In addition, recent class action settlements reached by CarMax's counsel in federal court have garnered at least 25 percent of the total damages awarded to the class as attorneys' fees. (*See* Katz Decl., ¶ 12 & Ex. C.)

32.     CarMax calculates the amount in controversy as attorneys' fees for Plaintiffs' waiting time penalties claim as **$3,945,379.80**, which is of 25 percent of the amount in controversy for that claim. (*See* Katz Decl., ¶¶ 12–13 & Ex. C.)

### 3.     Summary of CarMax's Calculations.

33.     As described above, as well as in the concurrently filed Katz Declaration, a reasonable and conservative estimate of the total amount in controversy, based on each of the categories listed above, is at least **$19,726,899.20**. (*See* Katz Decl., ¶ 14.) Although CarMax specifically denies Plaintiffs' claims and denies that Plaintiffs will recover any of the relief they seek, it is clear from the scope of the relief sought that the amount in controversy arising from the relief Plaintiffs seek in this action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.     CARMAX HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS.

34.     <u>Venue Is Proper</u>. The Superior Court of California, Alameda County, is located within the Northern District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Northern District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

35.     As further required by 28 U.S.C. § 1446(a), CarMax hereby provides this Court with copies of all process, pleadings, and orders served on CarMax in this action. (*See* Ex. A;

Wilson Decl., ¶ 3.)  CarMax has not been served with any pleadings, process, or orders besides those attached.  (Ex. A; Wilson Decl., ¶ 3.)

36.     In accordance with 28 U.S.C. § 1446(d), CarMax will promptly give written notice to Plaintiffs of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of Alameda.  Further, in accordance with Federal Rule of Civil Procedure 7.1 and Northern District of California Local Rule 3-15, respectively, CarMax concurrently files its Disclosure Statement and Disclosure of Non-Party Interested Entities or Persons, and, in accordance with Local Rule 3-13, concurrently files its Notice of Pendency of Other Action or Proceeding.

37.     Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, CarMax requests that the Court issue an Order to Show Cause so that CarMax may have an opportunity to more fully brief the basis for this removal.


DATED:  February 1, 2019                          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.



By:  /s/ Jack S. Sholkoff
     Jack S. Sholkoff
     Jennifer L. Katz

Attorneys for Defendants
CARMAX AUTO SUPERSTORES WEST COAST, INC. and CARMAX AUTO SUPERSTORES CALIFORNIA, LLC