Jacob N. Whitehead, Esq. SBN 266123
*jacob@jnwpc.com*
WHITEHEAD EMPLOYMENT LAW
15615 Alton Pkwy, Suite 175
Irvine, CA  92618
Telephone: (949) 936-4001
Facsimile:  (949) 450-1588

Patrick McNicholas, Esq. SBN 125868
*pmc@mcnicholaslaw.com*
McNicholas & McNicholas, LLP
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90024
Tel. (310) 474-1582
Fax (310) 475-7871

Attorneys for Plaintiffs, Aleena Iqbal and Emil Milisci, in their
Representative capacity on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEENA IQBAL, and EMIL MILISCI, each individually, and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>vs<br><br>CARMAX AUTO SUPERSTORES WEST COAST, INC., a Virginia corporation; CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, a Virginia limited liability company; and DOES 1-50, inclusive,<br><br>Defendants | Case No.:  3:19-cv-00586-EDL<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF LABOR CODE ¶ 2698 et seq. (Private Attorneys General Action of 2004)** |

Plaintiffs, ALEENA IQBAL, and EMIL MILISCI, (each individually as "Plaintiff" and collectively, the "Plaintiffs"), each individually, on behalf of themselves and on behalf of all others similarly situated, hereby file this Complaint against

Defendant, CARMAX AUTO SUPERSTORES WEST COAST, INC., a Virginia corporation ("Defendant")  and CARMAX AUTO SUPERSTORES CALIFORNIA LLC, a Virginia limited liability company ("Defendant") and (collectively, "Defendants")  allege as follows:

## I.  **INTRODUCTION**

1. The Representative Plaintiffs bring this Second Amended Complaint as a representative action against Defendants to recover penalties pursuant to The Private Attorneys General Act of 2004, ("PAGA") Labor Code § 2698 et seq. on behalf of the state of California and on a representative basis, as well as attorneys' fees and costs.

2. The Defendants The non-exempt Plaintiffs and aggrieved employees are or were formerly employed by Defendants within the State of California.

3. Plaintiffs bring this action on their own behalf and on behalf of other similarly-situated current or former non-exempt employees of CarMax.

4. Plaintiffs are informed and believe, and based thereon allege that Defendants currently employs, and/or have hundreds of employees in the State of California in non-exempt positions during the one-year relevant statutory time period.

5. Plaintiffs allege that during the relevant statutory time period, Defendants violated numerous provisions of the California Labor Code.   Plaintiffs and the aggrieved employees are and/or were entitled to be paid an hourly wage for all hours worked, including unpaid premiums for missed rest breaks and missed meal breaks, overtime compensation, timely compensation of all wages when due, accurate wage statements, and to be reimbursed for expenses incurred for the necessary use of their personal cell phones in the discharge of their job duties.

/

//

## II.  **THE PARTIES**

**The Representative Plaintiffs**

6. Plaintiff, Aleena Iqbal, is a resident of Tracy, California, and at all relevant times worked at CarMax in Pleasanton, California in the County of Alameda. She will serve as an adequate, typical and active participant and class representative for the proposed Class and/or potential subclasses.  Plaintiff, Iqbal was formerly employed by Defendants as a non-exempt sales associate who worked selling cars for Defendants from March of 2016 to April of 2018.

7. Plaintiff, Emil Milisci, is a resident of Newport Beach, California and at all relevant times reported to work at the CarMax location in Irvine, California in the County of Orange, California.  He will serve as an adequate, typical and active participant and class representative for the proposed Class and/or potential subclasses.  He was formerly employed by Defendants as a non-exempt sales associate who worked selling cars for Defendants from January 10, 2007 to November 8, 2018.

**The Defendants**

8. Defendant, CarMax Auto Superstores West Coast, Inc., is a Virginia corporation,  ("CarMax, Inc.") with its principal place of business located at 12800 Tuckahoe Creek Parkway, Richmond, VA 23238.  CarMax, Inc. is duly registered as a foreign corporation with the California Secretary of State.  Defendant, CarMax Inc., is a new and used car automobile dealership and maintains CarMax sales locations throughout many parts of California, including Alameda County in Northern California.

9.  Defendant, CarMax Auto Superstores California, LLC, is a Virginia limited liability company; ("CarMax LLC") with its principal place of business located at 12800 Tuckahoe Creek Parkway, Richmond, VA 23238.  CarMax, LLC is a used car dealership, duly registered as a foreign entity with the California

Secretary of State and conducts business throughout California, including Alameda County in Northern California.

10.  The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue defendants by such fictitious names.

11.  Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

12.  Plaintiffs are informed and believe, and based thereon allege, that each Defendants acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendants are legally attributable to the other Defendants.

### III.  JURISDICTION AND VENUE

13. This Second Amended Complaint is a representative action brought pursuant to the PAGA.

14.    Defendants have already appeared and have been served in this matter.

15.    On February 1, 2019, Defendants initiated removal of this action which was originally filed on November 21, 2018 and then-pending in Alameda County Superior Court and removed the present action to this Court under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. §1332 (d) 1441 and 1453, and alleging diversity of citizenship, having alleged that Defendants are both citizens incorporated in the Commonwealth of Virginia where they maintain their respective corporate headquarters and further alleging that Plaintiffs have current or last-known address records indicating that they are domiciled citizens of California.

## IV.  GENERAL ALLEGATIONS

17.    Upon information and belief, Defendants employ and have employed individuals in various non-exempt positions at their car sales lots as sales consultants, service consultants, customer operators, business office associates, or other similarly titled positions.

18.   As sales consultants and sales and business associates working for Defendants, the Plaintiffs and the Aggrieved  Employees are and/or were paid by the hour and /or with commissions earned on car sales.

19.    Further, during the relevant one-year statutory period as a matter of routine and daily practice, Plaintiffs and the Aggrieved Employees are/were required to use and keep their personal cell phones with them in conducting their job duties.  Sales Associates often move about Defendants' large car lots and area dependent on cell phone communications with supervisors and co-team Members.

20.   As a matter of routine practice, Defendants' managers maintain, print out and circulate a list of employee names and personal cell phone numbers for managers and supervisors to reference to quickly reach employees.  Such managers and supervisors routinely send out group text messages to employees to advise them of status of important events such as staff meetings. Many of Defendants' managers and supervisors routinely text or use chat apps to communicate with employees both at work and while they are/were at home off the clock.

21.   Furthermore, Plaintiffs and the Aggrieved Employees are/were encouraged to and allow customers to call or text them on their personal cell phones, even during off hours.  Otherwise potential customers they are/were working with have to call the lot on the main inbound call center phone line if a customer does not have their sales associate's cell phone number. The practice of maintaining customer contact by providing customers with their personal cell phone information is a necessity in order to prevent a potential customer with whom a sales associate has established a relationship from being misappropriated or routed to a different sales consultant.

22.  At no time have Plaintiffs or the Aggrieved Employees, been reimbursed for the use of their personal cell phones.

23.  During the relevant one year statutory time period, Defendants and their managers and supervisors often called or sent work related text messages to their employees while at home or off and clock, but failed to record and track the time worked when the non-exempt Plaintiffs and the Aggrieved Employees worked off the clock, as is required by Labor Code Section 1174 (d).

24.  Furthermore, during the relevant one year statutory period, Plaintiffs and the Aggrieved employees routinely worked overtime, including Saturdays and Sundays but were not properly paid their overtime wages.

25.  During the relevant one-year statutory period, Defendants maintained a comparatively low, flat rate per car commission policy, (ranging from $100 to $150 per car sold) which commission does not vary with the value of the car.   In addition, Defendants maintain a "sufficient engagement" or "sufficient contact" policy which provides if any associate has sufficient contact or engagement with a customer, they are entitled to half the commission earned by the sales person who sold the car.  Under the policy, actions as simple as greeting a customer who comes onto the lot, or sending an email or allowing a customer to take a test drive is deemed sufficient engagement, entitling them to share the commission.  Because of the cut-throat nature of the used car sales industry, Defendants' "sufficient engagement" policy creates or created incentives for other associates to deliberately intercept customers in order to prey on commissions of other sales consultants.  Thus, during any purported or attempted meal or rest breaks, the Plaintiffs and Aggrieved Employees had their cell phones with them and are or were constantly on alert to attend to their customers who are present at the CarMax stores' car lots, and responded to constant text messaging and emails from customers, managers and co-workers.  Defendants' policies demand that Plaintiffs and

the Aggrieved Employees be literally available to serve its customers on a round-the-clock, 24 hour basis, whether these workers are on or off the clock.

26.   As a result of this "sufficient engagement" policy, Plaintiffs and the Aggrieved Employees very frequently failed to receive duty free rest periods or duty-free meal breaks because of the threat of loss of half of a $100-dollar commission on a sale to a customer that they might have worked with for weeks or even longer, were another colleague to "sufficiently engage" a customer while they are on a ten-minute rest period or a meal break, if they didn't keep their cell phone with them and a watchful eye on incoming text messages and emails to which they responded, during any purported rest or meal breaks.

27.   Thus, even though Defendant purports to have a rest and meal break policy, in reality and in practice the rest break and meal break policy is systemically ignored by Defendants and never enforced.

28.   Defendants are fully aware that at least four days out of five, their employees - whose livelihood depends on their commission earnings, frequently, take their breaks very late or miss them entirely for fear of losing out on a customer and full commission if they do not remain available at all times to their customers.

29.   Resultantly, Defendants through their policies and conduct impeded the Plaintiffs and similarly situated Aggrieved Employees the ability to take their lawfully entitled rest and meal breaks.

30.   Moreover, on information and belief, the non-exempt Plaintiffs allege that they and the Aggrieved Employees did not waive their meal or rest periods during the liability period.

31.   Accordingly, during the relevant one-year statutory period, the Plaintiffs and the Aggrieved Employees were not provided with the statutorily prescribed one hour premium pay wages in lieu of missed meal breaks in one or more of the following manners:

a.) They were not provided meal periods for work days in excess of five and/or ten hours and were not compensated one hour's wages in lieu thereof, all in violation of, among others, Labor Code §§ 226.7, 512, and applicable IWC Wage Order No. 4-2001;

b.) Plaintiffs and the Aggrieved Employees were required to work through their daily meal period(s), or to work an unlawful "on-duty meal period;" or

c.) They were impeded in their ability to take a meal period.

32. In addition, during the relevant one-year statutory period, due to the foregoing alleged policies and practices, the Plaintiffs and Aggrieved Employees were and/or are not provided lawful rest periods, and are or were not provided with one hour's wages in lieu thereof, in one or more of the following manners:

a.) They are/were required to work without being provided a minimum ten minute rest period for every four hours or major fraction thereof worked and not being compensated one hour of pay at their regular rate of compensation for each workday that a rest period was not provided; or

b.) They are/were either impeded or prevented from taking or unable to take lawful rest periods.

33. As a direct result of the foregoing alleged practices, the Plaintiffs and the Aggrieved Employees did not and have not received accurately itemized wage statements during the relevant one-year statutory period.

34. During the relevant one-year statutory period, due to these uniform practices, the Plaintiffs and the Aggrieved Employees are and/or were not paid wages for all hours worked, whether regular time or overtime, and for hours worked while off the clock, and/or were required to work without compensation during the workday and workweek while performing tasks, duties, and responsibilities for compensable hours worked.

35. Further on information and belief, Defendants willfully failed to pay all such legally due wages when formerly employed Plaintiffs or Aggrieved Employees

ceased their employment with Defendants in violation of California Labor Code Section 203.

36.   By uniformly maintaining the foregoing uniform policies and practices, Defendants forced Plaintiffs and other similarly situated Aggrieved Employees to understate the actual hours they worked, the Defendants deliberately and knowingly failed to maintain an accurate record of all hours worked by the Plaintiffs and Aggrieved Employees, which resultantly allowed Defendants to wrongfully pad their own pockets by knowingly withholding wages that were due the Plaintiffs and Aggrieved Employees.

37.   Accordingly, Plaintiffs bring this case as a representative action seeking penalties for the state of California in a representative capacity, as provided by the Private Attorneys General Act ("PAGA") to the extent permitted by law, and as aggrieved employees who held the positions, identified herein and who were subject to Defendants' violations of the labor code.

38.   A true and correct copy of the Plaintiffs October 31, 2018 written notice showing compliance with California Labor Code § 2699.3 is attached hereto as **Exhibit A** and demonstrates that the Plaintiffs are aggrieved employees who have standing to bring a representative action on behalf of the State of California and the Labor and Workforce Development Agency (the "LWDA") as private attorney generals.

39. No notice of cure by defendants has been provided and no notice of investigation was received from the LWDA within in the statutorily proscribed 65-day period since the mailing of the written notice. Accordingly, Plaintiffs file this Second Amended Complaint as a Representative action as specifically permitted and authorized by Labor Code § 2699.3(a)(2)(a).

## CAUSE OF ACTION
### Violation of the PAGA
### (Against all Defendants and Does 1-50, Inclusive)

40.     Plaintiffs re-allege and incorporate by reference all of the foregoing paragraphs, as though fully set forth herein.

41.     The PAGA expressly establishes that any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency (the "LWDA"), or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the California Labor Code may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

42.     Plaintiffs, by their employment with Defendants and Defendants' violations of the Labor Code as alleged herein, are aggrieved employees with standing to bring an action under the PAGA.

43.     On October 31, 2018, Plaintiff's provided written notice to the LWDA and the Defendants of the specific provisions of the Labor Code Plaintiffs content were violated, and the theories supporting their contentions, a true and correct copy of which is attached as **Exhibit A** hereto.

44.     Plaintiffs' Second Amended Complaint avoids the statute of limitations as a potential bar as it rests on the "same general set of facts" as the original complaint under the Relation-Back doctrine first articulated by California's Supreme Court in *Austin v. Massachusetts Bonding and Ins. Co.* (Cal. 1961) 56 Ca. 2d 96; reiterated again in *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal. 3d 932 as established law, and as held in a consistent lineage of cases ever since.  Here, Plaintiffs' PAGA Complaint relates back to the original civil class action complaint that was filed against Defendants on November 21, 2018 in Alameda County Superior Court, (Case No. HG18929561) in which Plaintiffs were named class representatives and which civil suit Defendants subsequently removed to the U.S.

District Court, Northern District of California (Case No. 3:19-cv-00586-EDL), where the action is currently pending.

45.     Pursuant to a First Amended Complaint filed in Alameda County Superior Court, on January 31, 2019, one day prior to Defendants' removal to the U.S. District Court, the Plaintiffs alleged their PAGA claims. The PAGA claims alleged herein are identical and based on the same general facts as those alleged in the original civil class action that was filed on November 21, 2018 in Alameda County Superior Court.  Moreover, Plaintiffs seek relief herein for the exact same harms and Plaintiffs factually allege and refer to the same incidents.   Most significantly, as Defendants have actively been defending the class action claims since the November 21, 2018 initiation of the original action, Defendants will not be prejudiced by Plaintiffs' present PAGA complaint.

46.   Plaintiffs, by virtue of **Exhibit A,** have satisfied all prerequisites to serve as representatives of the general public to enforce California's labor laws including, without limitation, the penalty provisions identified in Labor Code § 2699.5. Since the LWDA took no steps within the time period required to intervene and because Defendants took no corrective action to remedy the allegations set forth above, Plaintiffs, as representatives of the people of the State of California, will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the DLSE. This includes each of the following, as is set forth in Labor Code § 2699.5, which states:

> "The provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of the following provisions: subdivision (k) of Section 96, Sections 98.6, 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, Sections 233, 234, 351, 353, and 403, subdivision (b) of Section 404, Sections 432.2, 432.5, 432.7, 435,

450, 510, 511, 512, 513, 551, 552, 601, 602, 603, 604, 750, 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021, 1021.5, 1025, 1026, 1101, 1102, 1102.5, and 1153, subdivisions (c) and (d) of Section 1174, Sections 1194, 1197, 1197.1, 1197.5, and 1198, subdivision (b) of Section 1198.3, Sections 1199, 1199.5, 1290, 1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301, 1308, 1308.1, 1308.7, 1309, 1309.5, 1391, 1391.1, 1391.2, 1392, 1683, and 1695, subdivision (a) of Section 1695.5, Sections 1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26, 1700.31, 1700.32, 1700.40, and 1700.47, paragraphs (1), (2), and (3) of subdivision (a) of and subdivision (e) of Section 1701.4, subdivision (a) of Section 1701.5, Sections 1701.8, 1701.10, 1701.12, 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, and 2673, subdivision (a) of Section 2673.1, Sections 2695.2, 2800, 2801, 2802, 2806, and 2810, subdivision (b) of Section 2929, and Sections 3095, 6310, 6311, and 6399."

47.  Plaintiffs are informed and believe that Defendants have violated and continue to violate the provisions of the Labor Code and applicable Wage Order

48.  Pursuant to Labor Code section 2699, any provision of the Labor Code that already provides a civil penalty to be assessed and collected by the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies or employees for violation of the code or does not provide a civil penalty may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees pursuant to the procedures set forth in Labor Code, section 2699.3.

49.  Plaintiffs, on their own behalf, and on behalf of the others similarly-situated are "aggrieved employees" because they were employed by the violators (CarMax and subsidiaries), during the one-year statutory time period and during such time period, were subject to one or more violations, including Labor Code sections 201, 203, 204, 226(a), 226.7, 510, 512, 1174, 1194(a), and 2802, and are therefore properly suited to represent the interests of a PAGA person.

50.  Plaintiffs are informed and believe that Defendants have violated and continue to violate provisions of the Labor Code and applicable Wage Order No. 4.

Despite mailing of **Exhibit A** at least 65-days prior to the filing of the filing of this Second Amended Complaint, the LWDA has not notified Plaintiffs that it intends to investigate the alleged Labor Code violations identified in **Exhibit A**, such that, by operation of law Plaintiffs are entitled to commence this cause of action as a representative action under the PAGA. *See Lab. Code 2699.3(a)(2)(A).*

### Failure to Reimburse Expenses

51. California Labor Code § 2802 provides than an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

52. As alleged supra, daily use of personal cells phones is a requirement in the daily and routine discharge of Plaintiffs and the Aggrieved Employees' discharge of their duties and are required in order to communicate with Defendants' managers, supervisors, their customers and their colleagues. Defendants do not and have not reimbursed Plaintiffs and the Class Members for their cell phone expenses.

53. As a direct result of Defendants' conduct in not reimbursing Plaintiffs and the Aggrieved Employees for personal cell phone expenses necessarily incurred in the discharge of their work-related duties, Defendants have violated Labor Code Section 2802.

### Failure to Pay Wages

54. Labor Code §200(a) defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

55. Plaintiffs and the Aggrieved Employees were at all times subject to California's laws and regulations protecting employees' entitlement to be paid and presumption to be paid all wages earned for labor performed, including an hourly wage for each and every hour worked.

56.   Labor Code § 1194 provides that employees are entitled to wages and compensation for work performed, at the legal rate, including straight time, overtime, and double time.

57.   Furthermore, under Labor Code §1194, employees must be separately paid an hourly wage for each and every hour worked.

58.    At all relevant times herein, Defendant was required to compensate Plaintiffs and the Aggrieved  Employees wages for all hours worked pursuant to Labor Code §1194.

59.   By uniformly discouraging and impeding Plaintiffs and the Aggrieved Employees from recording all the hours they worked and by systemically failing to track and record all of the hours worked by Plaintiff and the Aggrieved Employees, Defendants were able to skim wages from the Plaintiffs and the Aggrieved Employees by not pay them a separately hourly wage for each and every hour worked.

60. Through this unlawful and illegal policy and practice, Defendants failed to pay Plaintiffs and the Aggrieved Employees all wages owed to them during the relevant time period.

**Failure to Pay Overtime Wages**

61.  At all times relevant herein, Defendant was required to compensate their non-exempt employees minimum wages for all hours worked and overtime wages for all hours worked in excess of eight (8) hours in a day or forty (40) hours in a workweek, pursuant to the mandate of Labor Code §510, 1194, 1197, and 1198.

62.  As a pattern and practice, Defendant routinely failed to pay Plaintiffs and the Aggrieved Employees for any hours worked other than their regularly scheduled hours, regardless of how many hours they actually worked, including all hours worked off the clock responding to telephone calls and text messages from managers, colleagues and customers on their own time.

63.  Plaintiffs and the Aggrieved Employees routinely worked between fifty (50) and eighty (80) hours per week, including Saturdays and Sundays.  However, during the relevant period, Defendant failed to compensate Plaintiffs and the Aggrieved Employees for all hours worked, resulting in a failure to pay all overtime wages they were due.

### Failure to Provide Complete and Accurate Wage Statements

64.  At all times relevant herein, Defendant was required to keep accurate records regarding their California employees pursuant to the mandates of Labor Code §226 and 1174 (d).

65.  As a result of Defendant's various Labor Code violations, Defendant failed to keep accurate records regarding Plaintiffs and the Aggrieved Employees. Defendants failed in their affirmative obligation to keep accurate records regarding Plaintiffs' and the Aggrieved Employees' gross wages earned, the total hours each of them worked, all deductions, net wages earned, and all applicable hourly rates and the number of hours worked at each respective hourly rate.

### Failure to Provide Meal Periods and Rest Periods

66.   In accordance with the mandates of Labor Code §226.7 and 512, Defendants were required to authorized and permit their non-exempt employees to take a ten minute rest break for every four (4) hours worked or a major fraction thereof, and were further required to provide their non-exempt employees with a 30-minute meal period for every five (5) hours worked.

67.  As a pattern and practice, Defendants failed to provide Plaintiffs with legally-mandated meal periods and rest breaks and failed to pay proper premium pay compensation for this failure.

/
//
///

---

SECOND AMENDED COMPLAINT

## Failure to Provide Complete and Accurate Wage Statements

68.   At all relevant times herein, Defendants were required to keep accurate records regarding their California employees pursuant to the mandate of Labor Code §§ 226 and 1174(d).

69.   Furthermore, Labor Code § 226(a) states, in pertinent part, that "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employees' wages or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid…, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…"

70.   As a result of Defendants; various Labor Code violations, Defendant failed to keep accurate records and failed in their affirmative obligation to provide Plaintiffs and the Aggrieved employees with accurately itemized wage statements regarding the true total number of hours each of them actually worked during each and every pay period, their gross wages earned, all deductions, and net wages earned, along with their applicable corresponding hourly rates, including premium pay for missed rest and/or meal breaks and including overtime rates for each respective hourly rate of overtime worked.   The inaccurate wage statements were not caused by inadvertent and occasional clerical mistakes, but rather were the result of a pre-determined, deliberate and uniform deliberate policy and practice of Defendants.

## Failure to Timely Pay Wages

71.   Pursuant to Labor Code §204, all wages earned by Plaintiffs and the Aggrieved Employees were and are "due and payable twice during each calendar

month, on days designated in advance by the employer as regular paydays."  For [l]abor performed between the 1st and 15th days, inclusive of any calendar month" payment is due no later than the 26th day of the month. "… for labor performed between the 16th and the last day, inclusive, of any calendar month, payment is due no later than the  10th of the following month…" By failing to pay Plaintiffs and the Aggrieved Employees properly, Defendants deprived them of timely payment of all wages earned, when due and owing at these regularly schedule intervals throughout the relevant time period in violation of Labor Code §204.

**Failure to Pay Wages Due Upon termination or separation of Employment**

72.  Labor Code §§ 201 and 202 require employers such as Defendants to pay their employees all wages due within the time specified by law.  California Labor Code § 203 provides that if any employer willfully fails to timely pay such wages, the employer must continue to pay the employee's subject wages until the back wages are paid in full or an action is commenced, up to a  maximum of 30 calendar days of wages.

73.  As alleged supra, the Plaintiffs and certain Aggrieved Employees have ceased employment with Defendants and at the time of separation, each of these individuals was entitled to be paid all wages each was due for all the hours each of them respectively worked, but to date, the representative Plaintiffs, nor the formerly employed Aggrieved Employees has received such compensation.

74.  Defendants violated Labor Code § 201- 203 by failing to pay all accrued wages due to Plaintiffs and the Aggrieved employees who have been discharged or who have quit during the relevant period.

**Damages**

75.   Defendants' acts constitute continuing and ongoing unlawful activity prohibited by the California Labor Code, as alleged and therefore these acts constitute violations of the PAGA.

76.   Pursuant to California Labor Code § 2699, Plaintiffs request and are entitled to recover from Defendants civil penalties in the amount of a hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation;

77.   Attorneys' fees and costs pursuant to Labor Code § 1194, 2699(g) and any other applicable statute.

78.   As alleged supra, notice of these violations were provided pursuant to Labor Code §2699.3 asking the LWDA if it intends to investigate the alleged violations.  More than 65 days have passed since notice was provided on October 31, 2018 and Plaintiffs have not received any notification from the LWDA that it intends to investigate the alleged violations.  Therefore, the representative Plaintiffs are entitled to prosecute their PAGA claims under Labor Code §2699, et seq.

79.   The proper measure of damages and penalties under the PAGA is as to all Aggrieved Employees, whether a part of this action or not.  Further this claim needs no certification to proceed with recovery.  See *Arias v. Superior Court* (2009) 46 Cal. 4th 969, 970-975.

80.   Accordingly, Plaintiffs respectfully request that the Court award judgment and relief in their favor including civil penalties under California Labor Code §2699 in the amount of one hundred dollars ($100) for each Aggrieved Employee per pay period for the initial violation, and two hundred dollars ($200) for each Aggrieved Employee per pay period for each subsequent violation during the relevant period, according to proof.

81.   Plaintiffs as the personal representatives of the Aggrieved Employees, will and do seek to recover any and all penalties for each and every violation shown to exist or to have occurred during the liability period, in an amount according to proof, as to those penalties that are otherwise only available to public agencies.  Said fund recovered will be distributed in accordance with eh PAGA, with at least 75% of said PAGA penalty recovery being reimbursed to the State of California and the LWDA.

## PRAYER FOR RELIEF

WHEREFORE, the representative Plaintiffs pursuant to PAGA pray for judgment as follows:

82.   Upon the PAGA Cause of Action, for civil penalties and wages pursuant to statute as set forth in Labor Code §2698 et seq., for Defendants' violations of Labor Code §§ 201-203, 204, 226(a), 226.3, 226.7, 510, 512, 558, 1174, 1194, 1198 and 2802.

83.   Upon the Cause of Action, for attorneys' fees and costs pursuant to Labor Code §2699 and any other applicable statute; and

84.   For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all claims and causes of action so triable.


DATED: March 20, 2019                    WHITEHEAD EMPLOYMENT LAW
                                         MCNICHOLAS & MCNICHOLAS, LLP


                                         By: _____
                                             Jacob Whitehead
                                             Patrick McNicholas
                                             Attorneys for Plaintiffs individually and on
                                             behalf of all others similarly-situated

EXHIBIT A



October 31, 2018

***Via Online Filing***
Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814

***Via Certified Mail (Return Receipt Requested)***
Annette Kuhlman, Registered Agent for Service of Process
CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

William D. Nash, CEO
CARMAX Auto Superstores West Coast, Inc.
12800 Tuckahoe Creek Parkway
Richmond, VA 23238

William D. Nash, CEO
CARMAX Auto Superstores California, LLC
12800 Tuckahoe Creek Parkway
Richmond, VA 23238

> Re:   **Notice Pursuant to the Private Attorneys General Act, California Labor Code §
> 2699.3 (the "PAGA")**

Dear Sir or Madam:

PLAINTIFFS, Derek Mcelhannon, Aleena Iqbal, and Christopher Syharath ("Plaintiffs")
have retained our firm to represent them and other similarly-situated current and former employees
of CARMAX Auto Superstores West Coast Inc., a Virginia corporation and CARMAX Auto
Superstores California, LLC, a Virginia limited liability company ("Defendants") for alleged
violations of the California Labor Code.  Defendants currently employ Plaintiffs and currently or
formerly have employed other similarly situated employees at their car sales lots located throughout
California (collectively, the "Aggrieved Employees").

Plaintiffs and the Aggrieved Employees worked in various positions, including, but not
limited to Sales Consultants, Service Consultants/Customer Advisors, Service/Customer Operators,
Business Office Associates and Inventory Associates (hereinafter, "Covered Positions").  This letter
formally serves to inform Defendants of Plaintiffs' intent to file a PAGA class action complaint
against Defendants and bring causes of action for violations of the PAGA and for injunctive relief for
Defendants' failure to pay for unreimbursed expenses, failure to provide compliant rest periods and
meal break periods, failure to pay overtime wages earned, failure to timely pay all wages due, failure
to provide accurate, failure to issue accurately itemized wage statements, and failure to pay all wages
due upon termination or separation of employment, during the relevant time period.  Based upon
these violations, Defendants violated numerous provisions of California's Labor Code including

Labor & Workforce Development Agency
October 31, 2018

violations of §§'s 201-202, 204, 226 (a), 226.7 510, 512, 1174, 1194, and 2802 as further detailed
herein below.

Plaintiffs are informed and believe that said violations are ongoing, systematic and uniform.
If Defendants fail to cure the alleged violations, as stated above, Plaintiffs will bring an action
against Defendants under the PAGA to recover wages and penalties and for injunctive relief as
provided by California law.[1]

### Facts and Theories to Support the Alleged Labor Code Violations

Plaintiffs and the Aggrieved employees currently or formerly worked for Defendants at the
CarMax stores throughout the state of California during the relevant period.  Plaintiffs and the
Aggrieved held positions including but not limited to sales associates, business service operators,
business office associates, ("Covered Positions") and perform or performed a variety of duties that
requires or required them to daily interact with customers, managers, supervisors, service
consultants, customer advisors and other CarMax team members throughout their scheduled shifts.

As a matter of routine and daily practice, Plaintiffs and the Aggrieved Employees are or were
required to use their personal cell phones in conducting their duties and related communications.
Sales Associates often move about Defendants' large car lots and are dependent on cell phone
communications with supervisors and co-team members.  Indeed, Defendants maintain, print out and
circulate a list of employee names with their personal cell phone numbers for managers and
supervisors to reference to quickly reach other coworkers and staff who worked the Covered
Positions.  Defendants' supervisory and managerial staff routinely send out group text messages to
employees to advise them of status of important events such as meetings, which the employees
would otherwise miss due to the logistical size and layout of the car lots. Many managers and
supervisors also routinely text and/or use chat applications to communicate with Plaintiffs and the
Aggrieved Employees at work and even when employees are at home and completely off the clock to

---

[1] Without limitation, Plaintiffs, if permitted, will seek any and all penalties otherwise capable of being
collected by the Labor & Workforce Development Agency ("LWDA").  This includes, each of the following, as is
set forth in Labor Code § 2699.5, which states:

The provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of the following
provisions: subdivision (k) of Section 96, Sections 98.6, 201, 201.3, 201.5, 201.7, 202, 203, 203.1,
203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of
Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections
226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of
Section 232, subdivision (c) of Section 232.5, Sections 233, 234, 351, 353, and 403, subdivision
(b) of Section 404, Sections 432.2, 432.5, 432.7, 435, 450, 510, 511, 512, 513, 551, 552, 601, 602,
603, 604, 750, 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021, 1021.5, 1025,
1026, 1101, 1102, 1102.5, and 1153, subdivisions (c) and (d) of Section 1174, Sections 1194,
1197, 1197.1, 1197.5, and 1198, subdivision (b) of Section 1198.3, Sections 1199, 1199.5, 1290,
1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301, 1308, 1308.1, 1308.7, 1309,
1309.5, 1391, 1391.1, 1391.2, 1392, 1683, and 1695, subdivision (a) of Section 1695.5, Sections
1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26,
1700.31, 1700.32, 1700.40, and 1700.47, paragraphs (1), (2), and (3) of subdivision (a) of and
subdivision (e) of Section 1701.4, subdivision (a) of Section 1701.5, Sections 1701.8, 1701.10,
1701.12, 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, and 2673, subdivision (a) of Section
2673.1, Sections 2695.2, 2800, 2801, 2802, 2806, and 2810, subdivision (b) of Section 2929, and
Sections 3095, 6310, 6311, and 6399.

Labor & Workforce Development Agency
October 31, 2018

communicate matters concerning meetings, work schedules or to ask work-related questions such as
"Hey, we can't locate [such and such] do you know where it is?"   These off-the-clock, work related
communications were never logged or recorded as time worked by the Defendants. Furthermore,
Plaintiffs and the Aggrieved Employees are and/or were never paid for such off-the clock, work-
related communications.

         Further, it is standard policy and practice for employees who work Covered Positions inside
the CarMax offices on the lots to encourage customers to text and email them information to allow
for expedient and convenient communications to facilitate service and sales.  Sales associates and
consultants in particular, routinely provide customers with their personal cell phone numbers, as
otherwise, such potential customers may call while they are out on the lot or be forced to call the
main office line.  All inbound calls come into the E-Hub and if a customer does not have the personal
cell phone number of the sales associate they've been consulting with, their calls are routed to
another sales consultant or worse, even when they ask for the sales associate by name as sometimes
appropriated by another employee.  These are illustrative of just a few examples of how Defendants
not only encourage, but require Plaintiffs and the Aggrieved Employees' use of cell phones to daily
communicate internally and externally with customers throughout their scheduled shifts.

         At no time have Defendants reimbursed Plaintiffs and the similarly situated Aggrieved
Employees for the use of their personal cell phones, which are routinely used and required in the
discharge of their duties.

         Plaintiffs and the Aggrieved Employees are compensated with a base hourly rate, plus
commissions.  They work very long hours during their scheduled shifts in order to sell as many cars
as possible.  This is because Plaintiffs and similarly situated Aggrieved Employees' commissions are
paid at a flat rate of $100 per car sold, regardless of the value of the vehicle.  Hand in glove with
Defendants' flat rate commission policy is also a policy that provides if another sales associate has
sufficient engagement or contact with a customer, then they are entitled to earn one-half of the $100
flat rate commission.  Under this sufficient contact policy, simply greeting a customer is deemed
sufficient contact to earn half of a $100 commission.  Sending an email, allowing a customer to go
for a test drive – any of these activities is deemed sufficient engagement with a customer entitling a
colleague to half of the commission when the car is sold.

         Because of these policies, Plaintiffs and Aggrieved Employees who work or worked in such
Covered Positions never take or took rest period breaks and seldom take lunch breaks.  Although
Defendants have a rest break and lunch break policy, because of the cut throat nature of the used car
sales business, in reality and practice the rest break and meal break policy is ignored and literally
never enforced.   Defendants are fully aware that at least four out of five days worked, Plaintiffs and
the Aggrieved Employees typically either take/took a late lunch, long after the fifth hour of work and
frequently, skip/skipped their lunch breaks entirely for fear of losing out on a customer and a full
commission.  Unless Plaintiffs and similarly-situated employees whose livelihood depends on their
commission earnings, if such employees do not remain available to help customers throughout their
entire shift, then they are required to split the $100 commission from any sale they worked on with
another associate or team member who helps assist their customer if they were to take a rest break or
a lunch break.  Because of the comparatively low, flat rate commission compensation, and
Defendants "sufficient engagement-contact" policy, Plaintiffs and Aggrieved Employees are afraid to
lose fifty (50 %) percent of a $100 commission after having worked for sometimes months with a
customer to sell a car, just because they wanted to take a rest break or a meal break. Thus, it forces
everyone to take their meal breaks late and more often than not to skip them altogether.  Defendants

Labor & Workforce Development Agency
October 31, 2018

managers and supervisors understand all too well and thus the "rule" that employees should take a
lunch after the 5th hour of labor worked, is virtually never enforced.  However, Defendants have
failed to pay Plaintiffs and the Aggrieved Employees premium pay equal to one hour of their regular
rate of pay, in lieu of such missed rest periods and meal breaks.

 As a result of Defendants' failure to provide compliant rest periods and meal breaks, and
failure to reimburse Plaintiffs and the Aggrieved Employees for the use of their personal cell phone,
Plaintiffs are not being timely paid all their rightfully earned wages by law and are not receiving
accurately itemized wage statements reflecting the premium pay and cell phone expense
reimbursement to which they are lawfully entitled.

 Moreover, Plaintiffs and a substantial portion of the Aggrieved Employees regularly worked
14 to 6 hours per day, seven days a week - especially Saturdays and Sundays, which is when the
CarMax stores experience the greatest amount of customer traffic.   For the Plaintiffs and Aggrieved
Employees not working Saturdays and Sundays was out of the question as weekends provide the
greatest opportunity for selling cars.  However, Defendants do not and have not paid the Aggrieved
Employees their proper overtime pay for hours worked in excess of eight hours in one workday and
for work in excess of 40 hours in any given workweek; nor have they paid them the proper rate of
twice the regular rate of pay for hours worked in excess of 12 hours in one day or for any work the
hours they worked in excess of eight hours on any seventh day of a workweek.

 Thus Defendants not only violated Labor Code §204 by failing to timely pay all wages twice
monthly, when former Aggrieved Employees' employment with Defendants ended, Defendants
failed to pay them all of their earned wages as described above, immediately upon their discharge or
within 72 hours thereafter.   In addition, Defendants have failed to pay the waiting time penalties to
which such Aggrieved Employees are entitled.

 At all times relevant, Labor Code § 200(a) defines "wages" as "all amounts for labor
performed by employees of every description, whether the amount is fixed or ascertained by the
standard of time, task, piece, commission basis, or other method of calculation." Labor Code §
200(b) defines "labor" as all "work" or service whether rendered or performed under contract,
subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed
personally by the person demanding payment."

 At all times relevant, Labor Code § 218 provides that "nothing in this article shall limit the
right of any wage claimant to sue directly or through an assignee for any wages or penalty due him
under this article."

 At all times relevant, Labor Code § 558 provides, in pertinent part, "[a]ny employer or other
person acting on behalf of an employer who violates, or causes to be violated, a section of this
chapter or any provision regulating hours and days of work in any order of the [IWC] shall be subject
to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid
employee for each pay period for which the employee was underpaid in addition to an amount
sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100)
for each underpaid employee for each pay period for which the employee was underpaid in addition
to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section
shall be paid to the affected employee."

Labor & Workforce Development Agency
October 31, 2018

At all times relevant, Labor Code § 204 provides that all wages, other than those mentioned in sections 201, 202, 204.1, or 204.2, earned by any person in any employment, are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

At all times relevant, Labor Code § 210 provides, in pertinent part, "every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

At all times relevant, Labor Code § 1174 was in force and effect.   Section 1174 provides, that every person employing labor in this state shall "… Keep, at a central location in the state or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

Here, Defendants violated Labor Code 201-202, 204, 226 (a), 226.7 510, 512, 1174, 1194 and 2802. As a result of their unlawful practices, including failure to provide compliant rest breaks and meal breaks; failure to pay them one hour's premium pay wage for each missed rest break or meal break; failure to pay proper overtime wages; failure to record all hours worked, including tracking and logging work related communications when employees are off the clock, failure to pay employees separately for all hours worked, failure to timely pay wages twice monthly, each calendar month worked; failure to reimburse for cell phone expenses incurred in the discharge of their duties; failure to provide accurately itemized wage statements; and failure to pay all wages due upon termination of employment, Defendants have failed to pay the Aggrieved Employees for all work related expenses incurred and for all labor performed.

## C.  Defendants Failed to Furnish Accurate Wage Statements to the Aggrieved Employees.

At all times relevant, Labor Code § 226(a) requires Defendants to "furnish each of [its] employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, … (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Here, Defendants violated Labor Code § 226 (a).  Defendants had a uniform policy and practice of failing to pay its workers premium pay wages for missed rest period and meal breaks,

Labor & Workforce Development Agency
October 31, 2018

failed to properly compensate the Aggrieved Employees for overtime worked and failed to reimburse workers for cell phone expenses necessarily incurred which were related and necessary in the discharge of their duties, thus failing to properly account for all applicable compensation and expense reimbursements to which the Aggrieved Employees in the Covered Positions are and were lawfully entitled during the relevant period.

Resultantly, Plaintiffs and the Aggrieved Employees shall also seek injunctive relief pursuant to Labor Code Section 226 (g) as well as their attorneys' fees, interest, expenses and costs of suit.

**B.  Defendants Failed to Reimburse Aggrieved Employees for their Expenses.**

California Labor Code Section 2802 provides that an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

As discussed above, Defendants engage or engaged in the routine practice of texting and calling Plaintiff and the Aggrieved Employees on their personal cellphones during their scheduled shifts, regarding meetings, customer inquiries and services, and require utilization of their workers personal cell phones when communicating internally and with customers,  but Defendants have not and do not pay the Aggrieved Employees a cell phone allowance, nor do they or have they reimbursed them for the daily imposition and required use of their personal cellphones to communicate in the discharge of their work-related duties in violation of Labor Code Section 2802.

In violation of Labor Code Section 2802, Defendants have failed to reimburse Plaintiffs and the Aggrieved Employees for their expenses which is a violation that has resulted in lost wages and lost interest.  Plaintiffs and the Aggrieved Employees are also entitled to their attorneys' fees, interest, expenses and costs of suit.

**C.  Defendants Have Failed to Maintain Records of All Hours Worked by Plaintiffs and the Aggrieved Employees**

Labor Code § 1174 provides, that every person employing labor in this state shall "… Keep, at a central location in the state or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

As stated, Defendants' managers and supervisors routinely send text message and chat communications to employees when they are at home and off the clock to notify them of work related issues or to ask them work related questions.   Such time in which they are engaging or formerly engaged Plaintiffs and the Aggrieved Employees about work related matters are never recorded, tracked, nor are/were Plaintiffs and the Aggrieved Employees compensated for such interruptions of their personal off the clock time.

Labor & Workforce Development Agency
October 31, 2018

### D.    Defendants Have Failed to Pay Plaintiffs and the Aggrieved Employees Separately For Each Hour Worked at the Legal Rate

Pursuant to Labor Code Section 1194, "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

As described supra, Defendants' managers and supervisors routinely send text messages and use chat apps to communicate with employees when they are at home and off the clock to notify them of work related issues or to ask them work-related questions.  As stated, Defendants have failed to track or record the time in which they are intruding and engaging employees about work-related issues when they are off the clock.  Moreover, Plaintiffs and the Aggrieved Employees have not ever been compensated for when they are responding to their employer's questions and thus are working off the clock for free.

### E.    Defendants Have Failed to Pay Plaintiffs and the Aggrieved Employees for All Overtime Worked

Labor Code Section 510 provides,

**"Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee…"**

As stated, Plaintiffs and the Aggrieved Employees routinely work or worked 60-70 hours per week, during the relevant time period, including Saturdays and Sundays.  Here, Defendants have not complied with Labor Code Section 510 by paying Plaintiffs or the Aggrieved Employees at 1.5 times their regular rate of pay for the hours they worked in excess of eight hours or in excess of 40 hours a week; nor did they ever pay them twice their regular rate of pay for work in excess of 12 hours in a day or for work in excess of eight hours on any seventh day of a workweek.

### F.    Defendants Have Failed to Timely Pay Wages

At all times relevant, Labor Code § 204 provides that all wages, other than those mentioned in sections 201, 202, 204.1, or 204.2, earned by any person in any employment, are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Labor & Workforce Development Agency
October 31, 2018

As discussed supra, Defendants failed to pay Plaintiffs and the Aggrieved Employees all wages due for labor performed twice during each calendar month.

**G.     Defendants Failed to pay all Wages Due to the Aggrieved Employees Upon Separation or Termination of Employment.**

At all times relevant, Labor Code § 201 provides that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  At all times relevant, Labor Code § 202 provides that if employees not having a written contract for a definite period quits their employment, their wages shall become due and payable no later than 72 hours thereafter, unless the employee has given 72 hours advance notice of their intention to quit, in which case the employee is entitled to their wages at the time of quitting.

At all times relevant, Labor Code § 203 provides that an employer who willfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, but the wages shall not continue for more than 30 days.

Here, Defendants have violated Labor Code §§ 201(a) and 204. When former Aggrieved Employees' employment with ended, Defendants failed to pay them all of their earned wages as detailed above, immediately upon their discharge or within 72 hours thereafter. In addition, Defendants have failed to pay the waiting time penalties to which such Aggrieved Employees are entitled under Labor Code Section 203.

To date, as set forth in detail above, Defendants have failed to pay the Aggrieved Employees all of their earned wages, accrued interest thereon, and failed to remit the Labor Code penalties to be imposed as a consequence of said violations of the Labor Code.

<u>**Conclusion**</u>

Defendants have violated the foregoing provisions of the California Labor Code.  Plaintiffs request the LWDA to investigate the above allegations and provide notice of the allegations under PAGA's provisions.  Alternatively, Plaintiffs request the LWDA to inform them if it does not intend to investigate these violations, so they may bring an action under the PAGA for the violations discussed in this letter.

Should you have any questions or comments regarding the foregoing, or any aspect of this matter, please do not hesitate to contact our offices.

Sincerely,

**WHITEHEAD EMPLOYMENT LAW**

Jacob N. Whitehead, Esq.

JNW/dlp